Let's see. I'll call the case in a second. And the case is, well, the cases are number 22, 26, 23, and 23, 17, 70, Stephen Eberhardt v. Patrick Walsh. And hello, Mr. Eberhardt. Good morning, Your Honor. May it please the Court, Your Honors. First of all, thank you for letting me appear remotely. Understanding that Your Honors have reviewed the briefs and the relevant filings, I'm going to limit myself to what I believe are the two most important points that actually go hand in hand. First would be the misrepresentations made in the motion for sanctions that led to Judge Norgle's misapprehensions of fact. And second, that goes hand in hand again is my right to a hearing. The focus of Rule 11 is narrow. It relates to a specific act, which is the signing of the pleading, and to a specific time, and it's the time of the signing. But in his request for sanctions under Rule 11 in Section 1927, Defendant Walsh sought sanctions based on his argument that he repeats in the Mr. Eberhardt has been on a crusade against the village of Tinley Park, its elected officials, staff, and residents, unquote. Now, Mr. Eberhardt, I mean, you've argued, and I take it you will continue, that an evidentiary hearing was necessary to assess the need for sanctions because the district court improperly found bad faith. But on reconsideration, Judge Pallmeyer held that you did not explain what purpose would be served by such a hearing. What could be gleaned from an evidentiary hearing that would undermine all of the evidence that you provide? Well, first, Your Honor, I think that Judge Pallmeyer's decision was somewhat conflicting. She made the statement that you point out, but she also made the statement that to the effect of, well, it appears that Eberhardt wants to show that some of this litigation led to remedying some inappropriate conduct on behalf of the defendant village. In the motion for reconsideration, I had pointed out that every single entry in the defendant's table A with regard to litigation had some type of an explanation. Before Judge Norgel, I pointed out the Tinley Sparks case in front of Judge Bucklow, which is kind of cut to the chase. On the table, Mr. Walsh said that in regards to outcome, he listed 18 as dismissed and one as settled. So I think it's important that we note the difference between dismissed and settled. So before Judge Norgel, I pointed out the fact of the Tinley Sparks case where when you read Judge Bucklow's opinion with regard to the ruling on the motion to dismiss, and then you go into the stipulation of dismissal, it's very different than just labeling it as dismissed. Didn't you have the opportunity to raise these issues in writing? My problem with raising and writing was the 15-page limit. In both pleadings, I noted that the 15-page limit would preclude me from going into every single matter that was listed, plus, quite frankly, the time that it took to dig out these old records and search federal court files, and actually files that had to do with the Illinois Attorney General Public Access Counselor. Wouldn't you have needed all of that for an evidentiary hearing? Well, correct, but if I'd been granted an evidentiary hearing, I would have been working 24-7 to get those documents, Your Honor. One of Judge Norgel's basis for sanctions was incompetence as well as bad faith. Under the CAPCO decision, there's no need for a hearing if that's one of the basis. Is that your understanding? No. I'm sorry. There was no finding of incompetence. Judge Norgel said that it should have been investigated further, the facts of the case should have been investigated further, so he never used the word incompetence. He pointed is the CAPCO case where, in that case, when a judge bases his sanctions on both incompetence and bad faith, no hearing is required. Here, there was a finding of bad faith. Correct. The finding of bad faith, I submit, was clearly based on a misapprehension of Judge Norgel because of the way that this table was prepared purposefully to mislead the court. I suggest, and I submit, Your Honors, we as lawyers, when somebody tells us or represents that a case is dismissed, we understand the context of that to mean rejected or ignored, and that leads us to conclude, you know, lack of merit. On the other hand, when you say that a to fix or resolve by mutual agreement gives a totally different understanding of the disposition of the case. So what was presented and put forth to Judge Norgel was the fact that these cases were all, quote, unquote, dismissed. It was followed up with arguments about how they were all frivolous, and that led necessarily to a misapprehension on his part. Let me ask. Did I miss in the record, I hear you to be saying you needed more than 15 pages to go into all this. Did I miss in the record a motion for leave to file excess pages? No, and it's not of record, but the way that I have to answer that, Your Honor, is I practiced in front of Judge Norgel for 30 years, and I saw no, I didn't see any success in asking for a motion to exceed the page limit. So I believe I did the best I could with trying to alert him to the fact, especially, again, pointing out such things as Judge Norgel, or Judge Bucklow's ruling, which I believe would have given Judge Norgel, you know, the information about how all of those representations could have been. Judge Norgel, I'm sorry. Go ahead, Judge Rovner. If you have a question, please. I just wanted to follow up on the bad faith. There was an August 5th letter that Judge Norgel spends a lot of time, the Rule 11 notice that was sent by Walsh's counsel on behalf of Walsh that argued that the complaint suffered from lack of standing and relied on the purchase ordinance, the purchasing ordinance that outlined what the board was permitted to do, and said that basis in 2020, before the Second Amendment complaint is filed, you would have had access to that continue to keep Mr. Walsh in the lawsuit when filing the Second Amendment complaint. Did we, and so was that the basis of bad faith? I know you mentioned that was, of Judge Norgel's finding. If it was, or no, it was not because I believe that went to investigation. When he talked about bad faith, I believe it's at page five of his order granting the sanctions, he specifically referred to the table that was prepared that showed bad faith on the part of my filings with regard to pleadings against the village. With regard to this purchasing ordinance, I think the record is now clear that even to this point, and in their brief on appeal, the defendants still want to rely on a purchasing ordinance that had been superseded. And of course, they don't want to get away from the fact that it's been superseded because Judge Norgel made an alternate comment about, well, maybe Eberhardt didn't know about it, but maybe he did, and he purposely disregarded it. But the fact of the that time is the village attorney did not even bring up the proper ordinance. And in my pleadings to Judge Norgel, I pointed out, I'm at the mercy of whatever the village put up on their website. But the language doesn't change though, correct? From 2017 to 2019, the applicable language and the ordinance that superseded says the exact same thing from the 2017 ordinance. Docket 153-9, and then the new applicable version 194-3, the language doesn't change. Still says the village manager is authorized to engage the services of engineers, attorneys, or other professional consultants for any matter that will create an obligation for such services not exceeding $20,000 without prior approval of the village board. And so that language in both agreements is exactly the same. So why does that distinction matter? The distinction matters because Mr. Walsh wanted to use that to attack that. The language is the same. Pardon? The language is the same. Correct. But he wants to key on the fact that I hid the ordinance. He doesn't really make a big point about the language is the same. But I submit to the court the language is actually meaningless because Judge Norgel never addressed the Lenahan case that was actually pointed out in the Second Amendment. You were saying earlier though that Judge Norgel made a mistake of relying on a previous version. No, Judge Norgel found that I failed to investigate because I didn't discover an ordinance that had been superseded. With regard to that, my point to Judge Norgel or actually Judge Pallbier then was, how could you fault me for not finding it when the defendant himself, who is now a village attorney, couldn't even find it? But the point is really a red herring in a way because in the amended complaint, I pointed out the Lenahan case. I filed an affidavit from the mayor at the time to talk about the proper way to appoint village attorneys. And defendants or Judge Norgel, with all due respect to Judge Norgel, was required to make a determination under Illinois law. The defendants argue that he could take judicial notice of the fact of this ordinance, but that's not the case. The cases they cite are federal cases that talk about judicial notice of criminal statutes. The law is that Judge Norgel was required to consider the interpretation of Illinois law by the state's highest court. The Supreme Court hasn't ruled. The appellate court had. The appellate court made clear that any appointment of a village attorney had to be done pursuant to statute and ordinance. It couldn't be changed without a referendum, and it wasn't done. So with all due respect, red herring, and I'd like to reserve my rest of my time. Well, there is no rest of the time, but I will give you a few minutes. The rest of time was over about five minutes ago, but don't you worry. Okay. Let's have Mr. Finn come up. Hello, Mr. Finn. Good afternoon, Judge Rovner. Good afternoon, Your Honor's counsel. May it please the court. My name is Patrick Griffin, and I represent the appellee, Patrick Walsh, in this matter. Before the court this morning, as you know, are two orders, both of which are being reviewed under an abusive discretion standard. The first is Judge Norgel's August 2022 order granting sanctions to Mr. Walsh, and the second is Judge Pallmeyer's April 2023 order affirming Judge Norgel's decision in denying Mr. Eberhardt's motion to reconsider. If I might, there are two issues that I want to address that are most prominent in Mr. Eberhardt's briefing. The first is what we just discussed, which is the hearing requirement, and the second, out of an abundance of caution, even though it wasn't discussed this morning, or this afternoon rather, it was discussed in his reply brief, and that is the element of substantial compliance with Rule 11. As to the matter of the hearing requirement, whether a hearing is required, the cases are all pretty clear that it depends on the circumstances. The case that Mr. Eberhardt relies on, the Rogers Towing case, basically says that when there's objectively unreasonable conduct found, which was found here by Judge Norgel, no hearing is required. It does make mention that if bad faith is found, a hearing may be required, but that bad faith reference in that case, the Rogers Towing case, cited to the Tech Store decision, which was a pre-1983 Rule 11 amendment case, and it was also an inherent power case, not a Rule 11 case. So I think the hearing requirement mentioned in the Rogers Towing case is not relevant here. If you look at the other cases that Mr. Eberhardt cited, the Brown case, the Catbook case that Your Honor mentioned, as well as the Teamsters Local case, all of those cases taken together stand for the proposition where the record demonstrates that there's objectively unreasonable conduct, a hearing is likely not necessary. When the record is clear that the counsel has been given an opportunity to respond, such as in the Brown case where there was an opportunity to respond not only to the motion for sanctions, but also a motion to reconsider was briefed, as in this case, no hearing was required. The Teamsters Local case goes so far as to say when it's obvious from the record that very little else would be gained by having a hearing, a hearing is actually discouraged. This case presents one of those instances where Mr. Eberhardt has had so many opportunities to demonstrate that there was something to be gained by a hearing, and he's never done that. He had an opportunity going back to the motions to dismiss that were filed in the underlying case, never brought up this magical evidence that might appear for a hearing. He never brought it up in response to the motion for sanctions itself. He never brought it up in his motion to reconsider. He never brought it up in his reply to the motion to reconsider. He hasn't brought it up, at least any evidence that he thinks he might adduce at a hearing, in either his appellate brief or his reply brief. The argument that, well, I didn't want to exceed a page limit is a little tough to take from a case that has been spanning thousands and thousands of pages. Judge Norgel notes in his ruling granting sanctions that in this case alone, Mr. Eberhardt filed 16 motions, motions for temporary restraining orders, motions for preliminary injunction, motions for all kinds of things, several of which were emergency motions. The idea that he couldn't take a little bit of time to tell us what he was going to demonstrate at a hearing, again, is a little tough to take. Also, the purpose of the hearing would be to give notice to other people. What is he going to show? Mr. Eberhardt has had notice from long before this case started that he was going down the wrong path. Judge Ehrlich, in the 2018 State Court case, warned Mr. Eberhardt that if you keep going down these paths, sanctions are on the horizon. Judge Feinerman, in a case that was filed almost simultaneously with this one, warned Mr. Eberhardt, you better be careful about the sanctions. Judge Norgel, when he initially dismissed the original complaint in this case, expressly warned Mr. Eberhardt in his dismissal order that an empty head and a pure heart don't stand muster with, don't pass muster rather, with Rule 11. So, all things considered, the hearing was really unnecessary and wouldn't have added any benefit. The second issue, and again... Oh wait, you wanted to just... All right, go ahead. You take your argument where you want to go. Go ahead. Well, so I want to address briefly substantial compliance because we didn't get a chance to brief it because it was raised at the tail end of Mr. Eberhardt's reply brief. And the very first thing I want to mention is I think that argument has very clearly been waived. Mr. Eberhardt, like his opportunities to have a hearing, Mr. Eberhardt never mentioned non-compliance with Rule 11 anywhere in response to our motion for sanctions. He never raised it in his motion to reconsider, he never raised it in his reply to the motion to reconsider, and he never raised it in his opening brief. And it's a little stunning when he argues in his reply brief that he should be salvaged somehow because he first learned in reading our statement of facts in our appellee's brief that we were arguing that he was being unreasonable and vexatious and otherwise not complying with Rule 11. It makes no sense to me. It was very clear with all three Rule 11 letters. Mr. Walsh himself delivered a Rule 11 letter in April of 2000 identifying to Mr. Eberhardt exactly what was wrong with his pleading. When I filed an appearance and began representing Mr. Walsh in August of 2000, out of an abundance of caution, we decided to basically give him another Rule 11 letter along with a motion which again detailed the specific defects in his complaint, and he ignored both of those. He also ignored the third one that we filed, again out of an abundance of caution, because after Judge Norgal dismissed Mr. Eberhardt's first complaint, he gave us a short amount of time to go ahead and respond to his First Amendment complaint. And while we probably could have relied on the first two letters, I didn't want to lull Mr. Eberhardt into a sense of sleep, I guess, and so we filed a third letter that advised him again, if you don't withdraw this complaint, we're going to proceed under Rule 11. So, those are the two main issues I wanted to address. There's a couple of others. Do you have a question, Judge Roper? No. I'm sorry. I don't. Okay. But I don't. Thank you. Thank you. Mr. Eberhardt takes issue in his briefs that our statement of the facts was argumentative, and therefore we should either be sanctioned or we should disregard some of our arguments. I would say that the statement of facts may be unflattering. I don't think that it's improperly argumentative. In his own brief, Mr. Eberhardt cites to the day case, which states that a statement of facts is argumentative when it treats a party's position as an established fact, even though not supported by the district court's findings. He goes on to cite some of the items that he thinks are improperly argumentative. One of them stating that, quote, while arguing the concealment was an established fact, defendant then quotes Judge Norval's comment regarding failing to cite the village ordinance, as well as arguing that the district court emphasized Mr. Eberhardt's failure to cite the village's purchasing ordinance. The district court never specifically found and established such a fact as defendant argues, end quote. If you look at that and then you look at Judge Norval's decision, the decision is replete with references to that very statement, including one which I'll just briefly quote. Judge Norval says on page six of his order, which is docket 167, quote, Walsh contends that Eberhardt concealed the purchasing ordinance from the court. Eberhardt, in his response to this motion, claims he was unaware of the purchasing ordinance. This is not true. Walsh's August 5th, 2020 notice, which predated the amended complaint, brought the purchasing ordinance to Eberhardt's attention. And again, that's docket 117. That's just one example, and there are others. Mr. Eberhardt misconstrues Judge Palmire's order. In his reply brief, Mr. Eberhardt takes this statement from Judge Palmire's order and then translates it into something else in his brief. And in her order, she states, Eberhardt does not explain what purpose would have been served by such a hearing. It appears he seeks to demonstrate that at least some of the litigation he initiated was successful in reforming improprieties on the part of the village. He then, in his reply brief, that statement by Judge Palmire and treats it as an affirmative statement by Judge Palmire that he, in fact, did create benefits. However, two lines later in Judge Palmire's decision, she states, Walsh's response defeats that contention, and the village defendants likely dispute Eberhardt's assessment of the value of his litigation conduct. So there are those types of misrepresentations that have been present throughout Mr. Eberhardt's pleadings in the district court and, frankly, in front of this court as well. I have several other things that I could discuss. I have 15 seconds left. If there are any questions of the court, I'd be happy to answer them. None from me. Thank you, Your Honor. Thank you very much, Mr. Griffin. Okay, Mr. Eberhardt, I'm going to give you three minutes. And, Your Honor, I'd be loved. Thank you, and I believe I'll be short. Simply, the bottom line, I believe, of the whole case is that a hearing is necessary in this case to address the purposeful misrepresentations that were made. I'll rely on the record and Your Honor's review of all the pleadings to show that purposeful misrepresentations were made and they could be explained. With regard to substantial compliance, there was nothing in any of the letters that was sent with regard to Rule 11 that would have given me notice of the fact of what was going to show up in the motion. And I respectfully suggest that it's now time for the Seventh Circuit to come in line with the rest of the country and say lawyers are entitled to know what they're facing strictly. This case didn't do that, and I ask Your Honor to consider that. Please reverse, at least reverse, send it back for a hearing. Thank you. Thank you very much. Thank you, Mr. Eberhardt, and thank you very much as well, Mr. Griffin. And the case will be taken under advisement. And have a good day. We are now...